CT1/435084                                                                                  8233-1

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| BESTAR ELECTRONICS INDUSTRY CO., LTD., a Chinese limited company, </br></br>      Plaintiff/Counter-Defendant, </br></br>v. </br></br>DIGISOUND-WIE, INC., an Illinois corporation, </br></br>      Defendant/Counter-Plaintiff. | ) </br> ) </br> ) </br> ) </br> ) Case No. 07-C-7290 </br> ) </br> ) </br> ) </br> ) |

## ANSWER AND AFFIRMATIVE DEFENSES TO AMENDED COUNTERCLAIMS

Plaintiff/Counter-Defendant BESTAR ELECTRONICS INDUSTRY CO., LTD. ("BeStar Electronics") by and through its counsel, Tressler, Soderstrom, Maloney & Priess, LLP, and for its Answer and Affirmative Defenses to Defendant/Counter-Plaintiff Digisound-WIE, Inc.'s Amended Counterclaims, Counts III and IV and the remaining portions of Count V, states as follows:

### Allegations Common to All Counts

1.    Digisound-WIE is an Illinois corporation formed in 2001 and owned 100% by Digisound-Electronic GmbH, which sells products in the U.S. through Digisound-WIE. Digisound-WIE sells buzzers, sirens, and loudspeakers, which are incorporated into automotive, telecommunication, fire and security, and white good products. Manufacturers of those products and components of those products are customers of Digisound-WIE and are located in the U.S. and Mexico.

**ANSWER:**    BeStar Electronics is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 1.

2.    BeStar Electronics is a Chinese limited company with its principal place of business in Jiangsu, China.

**ANSWER:**    BeStar Electronics admits the allegations of Paragraph 2.

3. On or about August 18, 2001, Digisound-Electronic GmbH and BeStar Electronics entered into a written "Contract for Chinese-foreign Equity Joint Ventures" (the "Joint Venture Contract"). Pursuant to the Joint Venture Contract, "Changzhou BeStar Acoustic Co." ("BeStar Acoustic") was formed as the Chinese joint venture entity, which is 51% owned by BeStar Electronics, 40% by Digisound-Electronic GmbH, and 9% by Orient-American Trade Co. The joint venture's purpose was and is for BeStar Acoustic to manufacture parts, in accordance with specifications provided by Digisound-Electronic GmbH and its affiliates, for sale by Digisound-Electronic GmbH and its affiliates outside of China and by BeStar Electronics within China. A specific purpose of the joint venture was to manufacture parts for Digisound-WIE to seek to sell to manufacturers in the U.S. and Mexico. Digisound-WIE fully performed its obligations under the Joint Venture Contract by promoting the sale of goods made by BeStar Acoustic and paying all amounts owed for the goods, after set off for all amounts due from BeStar Acoustic or BeStar Electronics.

**ANSWER:** **BeStar Electronics admits the allegations within the first two sentences of Paragraph 3. BeStar Electronics denies all remaining allegations of Paragraph 3.**

4. Wu YiFie, also known as David Wu, was and is the Managing Director of both BeStar Electronics and BeStar Acoustic.

**ANSWER:** **BeStar Electronics admits the allegations of Paragraph 4.**

5. Sometime before or during April 2007, while the joint venture was still in effect (and which remains in effect), BeStar Electronics (through Wu Yifie), Florian Greiling (who was then Managing Director of Digisound Electronics GmbH), and Dirk de Young and Helene de Young (who were then Digisound-WIE's only employees) formed a plan to misappropriate Digisound-WIE's (a) customer relationships, (b) relationship with its independent manufacturer's representative, CC Electro Sales, Inc., and (c) sales.

**ANSWER:** **BeStar Electronics denies the allegations of Paragraph 5.**

6. The plan included, among other things, to have Dirk de Young and Helene de Young compete directly with Digisound-WIE while they still served as Digisound-WIE's sole employees and afterward. BeStar Electronics knew that the de Youngs' competition with Digisound-WIE breached the de Youngs' duty of loyalty to, and Dirk de Young's written employment agreement with, Digisound-WIE. The employment agreement prohibited Dirk de Young from competing with Digisound-WIE during and for one year after his employment with it.

**ANSWER: BeStar Electronics denies the allegations of Paragraph 6.**

7. Sometime before or during April 2007, BeStar Electronics, the de Youngs (while still employed by Digisound-WIE), and others whom they conspired with induced CC Electro Sales, Inc. to breach its written contract with Digisound-WIE in at least two ways. First, they induced CC Electro Sales to represent them in offering for sale parts that were the subject of the Joint

2

Venture Contract, even though CC Electro Sales was still bound by contract to solely represent Digisound-WIE in offering those parts for sale. Second, they induced CC Electro Sales to immediately terminate its contract with Digisound-WIE without giving the contractual minimum of 30 days' prior notice. Part of the purpose of BeStar Electronics, the de Youngs, and those who conspired with them in inducing CC Electro Sales' breaches was to in turn induce Digisound-WIE's customers and prospective customers to purchase from them through a false representation, created by their words and conduct, that their parts were being offered through or authorized by Digisound-WIE, thereby avoiding the customers' and prospective customers' long and uncertain processes for qualifying new parts and vendors.

**ANSWER: BeStar Electronics denies the allegations of Paragraph 7.**

8. In April 2007, in furtherance of the foregoing plan, the de Youngs (while still employed by Digisound-WIE) stopped submitting Digisound-WIE orders for BeStar Acoustic parts for the purpose of preventing Digisound-WIE from filling its orders from customers, whose just-in-time or lean manufacturing systems depend on suppliers maintaining an adequate supply of inventory for delivery as needed. As the customers' inventories grew short, CC Electro Sales, while still purporting to be Digisound-WIE's agents, purposely delayed responding to customer inquiries about the status of orders they had placed with Digisound-WIE through CC Electro Sales.

**ANSWER: BeStar Electronics denies the allegations of the first sentence of Paragraph 8. BeStar Electronics is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of the remaining allegations of Paragraph 8.**

9. On or about April 24, 2007, in furtherance of the foregoing plan, the de Youngs (while still employed by Digisound-WIE) placed a "replacement" order for 45,000 BeStar Acoustic parts. However, none of the parts ever appeared in Digisound-WIE's inventory or records. On information and belief, BeStar Electronics billed Digisound-WIE for the parts, which were diverted to BeStar Technologies for sale to Digisound-WIE's customers.

**ANSWER: BeStar Electronics denies the allegations of the first sentence of Paragraph 9. BeStar Electronics is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of the remaining allegations of Paragraph 9.**

10. On May 4, 2007, in furtherance of the foregoing plan, the de Youngs (while still employed by Digisound-WIE) signed papers to incorporate BeStar Technologies. The Articles of Incorporation, filed May 10, 2007, show the de Youngs, Wu Yifei, Gou Ling, and Lilli Greiling as shareholders. Gou Ling is a member of the Board of Directors of BeStar Electronics and/or BeStar Acoustic, while Lilli Greiling is the daughter of Florian Greiling and, on information and belief, serves as his proxy.

**ANSWER: BeStar Electronics denies the allegations of the first sentence of Paragraph 10 and denies the allegation that Gou Ling is a member of its Board of Directors. BeStar Electronics is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of Paragraph 10.**

11. In early June 2007, BeStar Electronics, through Wu Yifie, met in China with the de Youngs (who were still employed by Digisound), Matt Cohen of CC Electro Sales (which was still under contract to exclusively represent Digisound-WIE), and others to finalize their steps to misappropriate Digisound-WIE's existing and prospective customer relationships and sales. Around the same time, and while still contractually required to act as Digisound-WIE's agent, CC Electro Sales began representing to Digisound-WIE's customers that it had "factory-direct" availability of Digisound-WIE's parts.

**ANSWER: BeStar Electronics denies the allegations within the first sentence of Paragraph 11. BeStar Electronics is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of the second sentence of Paragraph 11.**

12. On or about June 25, 2007, the de Youngs resigned their employment with Digisound-WIE and immediately opened an office and warehouse in the adjoining space for BeStar Technologies, on whose behalf it had leased the space while still employed by Digisound-WIE. The de Youngs intentionally selected an office and warehouse with the same street address as Digisound-WIE's in order to create the appearance that BeStar Technologies was a new name for or successor of Digisound-WIE. Before resigning, the de Youngs also misappropriated data from Digisound-WIE's computers concerning its sales and operations and destroyed the data that resided on the hard drives of those computers. The data that was copied and/or destroyed included Digisound-WIE's pricing to different customers, purchase orders from customers, past and expected parts deliveries to customers, and the correlations between Digisound-WIE part numbers and BeStar part numbers.

**ANSWER: BeStar Electronics is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 12.**

13. On July 1, 2007, CC Electro Sales further breached its contract with Digisound-WIE by terminating it without providing the contractual minimum 30 days' prior notice. CC Electro Sales immediately entered into an almost identical contract with BeStar Technologies, which it and the de Youngs had prepared and negotiated long in advance with BeStar Electronics' knowledge and approval.

**ANSWER: BeStar Electronics is without knowledge or information sufficient to form a**

4

belief as to the truth or falsity of the allegations of Paragraph 13.

14. During September 2007, Wu Yifie acting on behalf of BeStar Electronics provided Digisound-Electronic GmbH letters for Digisound-WIE's customers. The letter stated that Be Star Acoustic supplies its "current products for [name of customer] only via Digisound and Digisound affiliated companies in USA." The statement was intentionally false and intended to deceive Digisound Electronics and Digisound-WIE that BeStar Electronics was complying and would continue to comply with the Joint Venture Contract. At the same time, BeStar Electronics, through BeStar Technologies, was selling to Digisound-WIE's customers the same parts that Digisound-WIE sold.

**ANSWER: BeStar Electronics denies the allegations of Paragraph 14.**

15. During 2007, Digisound-WIE sent BeStar Electronics credit memos for defective goods shipped to it. While BeStar Electronics did not dispute the correctness of the credit memos or their accuracy, it claimed that Chinese accounting regulations prevented it from reducing the amount it claimed from Digisound-WIE by the amounts of the credit memos. BeStar Electronics proposed, and Digisound-WIE accepted, that BeStar Electronics would pay by wire transfer to Digisound-WIE's account a portion of the credit memos immediately after each Digisound-WIE wire transfer to BeStar Electronics' bank account. Despite Digisound's payments, BeStar Electronics failed to make any payment to Digisound-WIE of its credit memorandum. BeStar Electronics then falsely claimed lack of payment from Digisound-WIE as an excuse to refuse to allow BeStar Acoustic parts to be delivered to Digisound-WIE to meet its customer obligations.

**ANSWER: BeStar Electronics admits only that in 2007, Digisound-WIE sent it credit memos. BeStar Electronics denies all remaining allegations within Paragraph 15.**

16. By preventing BeStar Acoustic parts from being delivered to Digisound-WIE, BeStar Electronics caused and continues to cause Digisound-WIE to be unable to fill its customers' orders, which BeStar Electronics has instead filled through BeStar Technologies.

**ANSWER: BeStar Electronics denies the allegations of Paragraph 16.**

17. As a result of the foregoing, Digisound-WIE suffered lost sales and injury to its customer relations in an amount in excess of $75,000.

**ANSWER: BeStar Electronics denies the allegations of Paragraph 17.**

### Count I - Breach of Fiduciary Duty

As the Court dismissed Count I of Digisound-WIE's Amended Counterclaim,

BeStar Electronics makes no answer to this Count.

### Count II - Breach of Contract

As the Court dismissed Count II of Digisound-WIE's Amended Counterclaim, BeStar Electronics makes no answer to this Count.

### Count III - Tortious Interference with Digisound-WIE's Contracts of Dirk de Young and CC Electro Sale

1-17.   For ¶¶ 1-17 of Count III of its Amended Counterclaims, Digisound-WIE repeats the preceding ¶¶ 1-17.

**ANSWER:** BeStar Electronics incorporates by reference herein its Answers to the allegations contained in Paragraphs 1 through 17 above.

22. Through the above conduct, BeStar Electronics knowingly induced Dirk de Young and CC Electro Sales to breach their respective contracts with Digisound-WIE, thus tortiously interfering with those contracts.

**ANSWER:** BeStar Electronics denies the allegations of Paragraph 22.

### Count IV - Tortious Interference with Digisound-WIE's Customer and Prospective Customer Relationships and Expectancy of Future Sales

1-17.   For ¶¶ 1-17 of Count IV of its Amended Counterclaims, Digisound-WIE repeats the preceding ¶¶ 1-17.

**ANSWER:** BeStar Electronics incorporates by reference herein its Answers to the allegations contained in Paragraphs 1 through 17 above.

23. At all relevant times, BeStar Electronics knew of Digisound-WIE's purchase orders from its customers located in the United States and its expectation that it would be able to continue to sell goods to those customers.

**ANSWER:** BeStar Electronics denies the allegations of Paragraph 23.

24. At all relevant times, BeStar Electronics knew of the specific prospective customers

from whom Digisound-WIE was seeking purchase orders for goods.

**ANSWER: BeStar Electronics denies the allegations of Paragraph 24.**

25. BeStar Electronics used the foregoing tortious means to induce Digisound-WIE's customers to have their existing purchase orders filled by BeStar Technologies and to place new purchase orders with BeStar Technologies instead of Digisound-WIE. BeStar Electronics further used the above tortious means to induce Digisound-WIE's prospective customers to instead purchase goods from BeStar Technologies.

**ANSWER: BeStar Electronics denies the allegations of Paragraph 25.**

26. Digisound would have filled the purchase orders from its customers, continued to sell additional goods to existing customers, and gained new purchase orders for goods from prospective customers but for the wrongful interference, as alleged above, by BeStar Electronics and the others with whom it conspired.

**ANSWER: BeStar Electronics denies the allegations of Paragraph 26.**

### Count V - Civil Conspiracy

1-26. For ¶¶ 1-26 of Count V of its Amended Counterclaims, Digisound-WIE repeats the preceding ¶¶ 1-26.

**ANSWER: BeStar Electronics incorporates by reference herein its Answers to the allegations contained in Paragraphs 1 through 17 above.**

27. Through the above tortious conduct, BeStar Electronics conspired with BeStar Technologies, Dirk de Young, Helene de Young, Florian Greiling, Lilli Greiling, CC Electro Sales, and others to commit torts against Digisound-WIE. The torts consisted of, among other things, (a) intentionally interfering with Digisound-WIE's employment contract with Dirk de Young and inducing him to violate the non-competition restrictions contained in that contract, (b) intentionally inducing the de Youngs to breach their duty of loyalty to Digisound-WIE, as alleged above, (c) intentionally inducing CC Electra Sales to breach its contract with Digisound-WIE, as alleged above, and (d) intentionally interfering, through the tortious means alleged above, with Digisound-WIE's customer contracts for the sale of goods to them and with Digisound-WIE's reasonable expectation that it would continue to sell good to those customers and gain purchase orders for the sale of goods to new customers.

**ANSWER: BeStar Electronics denies the allegations of Paragraph 27.**

## **AFFIRMATIVE DEFENSES**

Plaintiff/Counter-Defendant, BeStar Electronics Industry Co., Ltd. ("BeStar Electronics"), by their attorneys and for its Affirmative Defenses to Defendant/Counter-Plaintiff's Amended Counterclaims Counts III, IV and V, states as follows:

### First Affirmative Defense

Defendant/Counter-Plaintiff's Amended Counterclaims, in whole or in part, fail to state a claim upon which relief may be granted.

### Second Affirmative Defense

To the extent Defendant/Counter-Plaintiff has failed to mitigate any damages, it is barred from relief.

### Third Affirmative Defense

BeStar Electronics has the right of offset of any amount of damages owed to Defendant/Counter-Plaintiff, if proven, by the amount of damages Defendant/Counter-Plaintiff owes BeStar Electronics.

### Fourth Affirmative Defense

BeStar Electronics' conduct was justified and/or privileged.

### Fifth Affirmative Defense

Defendant/Counter-Plaintiff's allegations of fact are incorrect, are being pled for fraudulent and improper purposes.

### Sixth Affirmative Defense

To the extent that Defendant/Counter-Plaintiff seeks equitable relief, Defendant/Counter-Plaintiff's inequitable conduct constitutes unclean hands and, therefore, bars the granting of the requested relief to Defendant/Counter-Plaintiff.

### Seventh Affirmative Defense

Defendant/Counter-Plaintiff's Counterclaims are, in whole or in part, barred by the doctrine of equitable estoppel, laches and/or waiver.

WHEREFORE, Plaintiff/Counter-Defendant, BeStar Electronics Industry Co., Ltd. respectfully requests with respect to each Affirmative Defense, that this Honorable Court enter judgment in its favor and against Defendant/Counter-Plaintiff Digisound-WIE, Inc., and for whatever appropriate relief this Court deems just.

BeStar Electronics Industry Co., Ltd. reserves its right to amend or supplement this answer with additional defenses if new information is ascertained regarding the instant action.

BESTAR ELECTRONICS INDUSTRY CO., LTD.

By: /s/ James K. Borcia
    One of Its Attorneys

Daniel R. Formeller
James K. Borcia
Charmagne Topacio
Tressler, Soderstrom, Maloney & Priess, LLP
233 South Wacker Drive, 22nd Floor
Chicago, IL 60606-6308
Tel.: (312) 627-4000

9

## CERTIFICATE OF SERVICE

I hereby certify that on August 12, 2008, I electronically filed the document entitled **Answer and Affirmative Defense To Amended Counterclaims**, with the Clerk of Court using the CM/ECF system, which will send notification of such filings(s) to All Counsel of Record.

BESTAR ELECTRONICS INDUSTRY CO., LTD.

By: /s/ James K. Borcia
One of Its Attorneys

Daniel R. Formeller
James K. Borcia
Charmagne Topacio
Tressler, Soderstrom, Maloney & Priess, LLP
Sears Tower, 22nd Floor
233 South Wacker Drive
Chicago, IL 60606-6308
Tel.: 312-627-4000
Fax: 312-627-1717

Ct1/435084